UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE.
at CHATTANOOGA

| | | |
|---|---|---|
| DELORA REAGAN, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:13-CV-185-CLC-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| *Defendant*. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Delora Reagan ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her Supplemental Security Income ("SSI") benefits. Both Plaintiff and Defendant have moved for summary judgment [Docs. 9 & 11]. Plaintiff alleges the Administrative Law Judge ("ALJ") failed to properly weigh the treating physician's opinion and failed to properly determine Plaintiff's credibility.

For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment [Doc. 9] be **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits; (2) the Commissioner's motion for summary judgment [Doc. 11] be **DENIED**; and (3) the Commissioner's decision denying benefits be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

## I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed her application for SSI on April 30, 2010, alleging disability as of May 7, 2007 (Transcript ("Tr.") 62, 91-100). Plaintiff's claim was denied initially on October

22, 2010, and upon reconsideration on April 12, 2011 (Tr. 62-68, 72-74). Plaintiff requested a hearing, and it was held on October 27, 2011. Plaintiff was represented at the hearing by an attorney. The ALJ issued an unfavorable decision on November 17, 2011, determining Plaintiff was not disabled because Plaintiff did not have an impairment that met or medically equaled a listed impairment and Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work that existed in the national economy (Tr. 14-18). Plaintiff filed an appeal but the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 8). Plaintiff timely filed the instant action.

## II.    FACTUAL BACKGROUND

### A.    Education and Employment Background

Plaintiff was 47 years old on the date of her administrative hearing and she is a high school graduate (Tr. 48, 91, 112). Plaintiff had previously worked as a part-time cafeteria monitor, an assembly worker packing batteries, sewing machine operator, and a part-time substitute teacher (Tr. 56-57, 60). She also spent time working at her husband's small appliance repair business (Tr. 47-48). Plaintiff has not worked since May 2007 (Tr. 48).

### B.    Medical Records

Plaintiff's extensive medical records reflect both physical and mental issues addressed by Plaintiff's own physicians as well as independent examiners, but her appeal focuses on her physical limitations. The following summary of Plaintiff's medical records addresses the pertinent issues raised by the parties and, although not specifically mentioned herein, all pertinent portions of the record have been reviewed.

Plaintiff's initial primary care physician was Dr. James Sego who saw Plaintiff starting prior to 2002 until 2009 (Tr. 211-289). In August of 2009, Dr. Forrest Tilson became Plaintiff's primary care provider. Dr. Tilson referred Plaintiff to Dr. Suzan House, a rheumatologist. Plaintiff also saw Dr. Timothy Viser in May 2007, Dr. Paul Brundage in June 2008, Dr. Benjamin Biller for a psychological evaluation in July 2010, Dr. Brad Millhouser in August 2010, Dr. William Holland in August 2010, and Dr. Michael Hollie from 1999-2011.

In August 2010, Plaintiff was seen by Dr. Holland, a consulting examiner. Dr. Holland described Plaintiff as obese, well groomed, and casually dressed. Dr. Holland noted Plaintiff "ambulates throughout the clinic without noticeable difficulty or gait disturbance; is able to sit and then rise from a seated position easily and gets on and off the examination table unassisted; her neck was supple, with no anterior tenderness or masses with "flexion 45 degrees, extension 30 degrees, lateral flexion 45 degrees bilaterally, rotation 60 degrees bilaterally" (Tr. 315). Dr. Holland also noted Plaintiff had a "normal range of motion at the shoulders, elbows, wrists, and hands with 5/5 grip strength bilaterally. Normal range of motion at the hips, knees, and ankles . . . [s]tation and gait testing including tandem and toe/heel walking were normal" (Tr. 316). Dr. Holland's assessment was that "she could work six to eight hours out of an eight hour day but will need to be seated about 30 minutes out of each hour. She could stand or walk for short distances for 20 to 30 minutes out of each hour" (Tr. 316). He noted her lifting should be limited to five to ten pounds frequently and up to 20 pounds occasionally (Tr. 316).

In October 2010, Dr. Tilson saw Plaintiff for worsening pain and chronic stiffness in her back, hips, and legs. Plaintiff was diagnosed with fibromyalgia, non-alcoholic steatohepatitis ("NASH"), diabetes, asthma, and hypertension (Tr. 331). In November 2010, Plaintiff came in for a follow-up regarding her blood work (Tr. 329).

3

In December 2010, Dr. House found Plaintiff's trapeziometacarpal joints were tender with mild hypertrophy; her MTPs (metatarsal phalangeal) were mildly tender; her PIP (bilateral proximal interphalangeal) were hypertrophic; and her Achilles was swelling or tender. Dr. House performed an x-ray of Plaintiff's lumbar spine which indicated minimal degenerative joint disease (Tr. 391). Dr. House also diagnosed osteoarthritis in Plaintiff's hands (Tr. 393). In April 2011, Plaintiff returned to Dr. House for follow-up and complained of frequent pain in her knee joints and muscles. Dr. House noted on physical examination: "[T]here is hypertrophy of the PIPs more so than the DIPs [distal interphalangeal joint]. . . . Knees are hypertrophic without effusion. . . . There is diffuse soft tissue tenderness." Dr. House also diagnosed fibromyalgia and osteoarthritis of the hands and knees (Tr. 396).

In May 2011, Plaintiff went back to Dr. Tilson with complaints of urinary frequency, fatigue, intermittent episodes of nausea and chronic diarrhea. On July 19, 2011, Dr. Tilson completed a clinical assessment of pain (Tr. 361-62). Dr. Tilson circled "pain is present to such an extent as to be distracting to adequate performance of daily activities or work"; "greatly increased pain and to such a degree as to cause distraction from task or total abandonment of task"; and "pain and/or drug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." (Tr. 361-62).

On July 21, 2011, Plaintiff was seen by Dr. Tilson and she complained of joint and muscle pain consistent with fibromyalgia, of having difficulty sitting for prolonged periods of time, and of not being able to ambulate for more than ten to fifteen minutes without having to stop because of joint and muscle pain in her legs. Dr. Tilson completed a medical source statement during this appointment which stated Plaintiff could occasionally lift up to 20 pounds and frequently lift less than ten pounds and could stand for one hour total in an eight-hour work

day and sit for one hour total in an eight-hour work day (Tr. 355-57). Dr. Tilson also noted Plaintiff's ambulation was severely affected (Tr. 360). Dr. Tilson listed chronic fibromyalgia as the only clinical finding used in support of his opinion (Tr. 355-60).

### C. Hearing Testimony

At the hearing on October 27, 2011, Plaintiff testified that she fell ill around May 7, 2007, and her asthma, diabetes, and pain continued to worsen until April 2010 when she filed her application for SSI (Tr. 48). Plaintiff testified about her limited daily routine, which consisted of trying to do chores, going back and forth to the bathroom, and reclining in an attempt to get comfortable (Tr. 48). The ALJ asked if Plaintiff had friends or family over and Plaintiff stated that they used to come over, but not as much now because of her illnesses. Plaintiff testified that her husband goes shopping, and she only goes "once in a blue moon" (Tr. 49). Plaintiff testified she has probably one good week out of the month (Tr. 49).

Plaintiff testified about her functional limitations, and stated that she can lift two pounds comfortably; she can sit for about 15 to 20 minutes comfortably, and can walk about 100 feet comfortably (Tr. 50). When asked if she can stand in one place comfortably, she responded: "[n]ot comfortably. I can stand. There's no doubt about that" (Tr. 50-51). Plaintiff testified that she had trouble gripping things and often broke objects. She stated she can write notes using her hands. Plaintiff also testified that she had trouble reaching into a refrigerator and reaching overhead (Tr. 51). Plaintiff also claimed to need to use the bathroom once every 30 minutes (Tr. 52).

Plaintiff testified about various doctor's visits, and recalled that Dr. House diagnosed her with fibromyalgia and arthritis but Dr. Stein said she only had a touch of arthritis (Tr. 53-54). Plaintiff testified about difficulties with breathing because of her asthma, stomach sickness in the

mornings, and constant pain with fluctuating severity (Tr. 53-54). Plaintiff also testified that she

had serotonin syndrome, and noted that she hallucinated due to antidepressant medication (Tr.

54). Finally, Plaintiff claimed to have difficulty with her memory, paranoia, fatigue, and anxiety

(Tr. 55-56).

A vocational expert ("VE") also testified at the hearing (Tr. 56-60). When asked whether

a hypothetical individual could perform Plaintiff's past work or other work if the individual was

restricted to light work and afforded the opportunity to alternate sit/stand positions every 30

minutes, the VE testified a cafeteria monitor job would be within that hypothetical, as well as

some assembly jobs (Tr. 57). When asked another hypothetical based on Dr. Tilson's

assessment, the VE testified there would not be any jobs such an individual could perform (Tr.

58). Finally, the VE stated there were no jobs that Plaintiff could perform if her testimony was

found to be credible because of the alleged pain and need for frequent restroom breaks (Tr. 59).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, No. 12-4316, 2013

WL 5749156, at *9 (6th Cir. Oct. 24, 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks*

*v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).

A claimant is disabled "only if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work, but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of her impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

**B.      The ALJ's Findings**

At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since April 30, 2010, the application date (Tr. 12). At step two, the ALJ found Plaintiff had the following severe impairments: asthma, diabetes, fibromyalgia, NASH, and hypertension (Tr. 12). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments (Tr. 14). Next, the ALJ found Plaintiff retained the RFC to perform a reduced

range of light work except that Plaintiff must have the option to sit or stand at 30 minute intervals (Tr. 15). Further, the ALJ found Plaintiff was limited to occasional kneeling, crouching, crawling, balancing, stooping, or climbing ramps or stairs (Tr. 15). At step four, the ALJ concluded that Plaintiff was unable to perform her past work (Tr. 17). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (Tr. 17).

## IV.    ANALYSIS

Plaintiff appears to assert two significant arguments in support of her claim that the ALJ's decision is not supported by substantial evidence. First, Plaintiff argues the ALJ failed to properly weigh the opinion of her treating physician opinion, Dr. Tilson, regarding her limitations and her pain. Second, Plaintiff asserts the ALJ's credibility finding was not based on substantial evidence.

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780,

782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

As relevant in this review, an ALJ must consider "the claimant's allegations of his symptoms . . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d

469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference). Substantial deference has been held to mean that "[a]n [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

**B.      Treating Source Opinion**

It is undisputed that Dr. Tilson is a treating physician and that his opinion is subject to the treating source rule. Dr. Tilson opined that Plaintiff's chronic fibromyalgia caused disabling limitations and persistent/distracting pain (Tr. 355-62). Dr. Tilson opined Plaintiff's ability to work was severely limited, indicating Plaintiff was capable of occasionally lifting and/or carrying 20 pounds and less than ten pounds frequently; standing and walking were affected and she could walk for a total of one hour in an eight hour workday and sit for a total of one hour in an eight hour workday. She could never climb, stoop, crouch, kneel, or crawl and reaching, handling, and pushing/pulling were affected (Tr. 355-60). Dr. Tilson also completed a Clinical Assessment of Pain Form and noted that Plaintiff has pain present to such an extent as to be distracting to the adequate performance of daily activities or work; and physical activity will

greatly increase pain to such a degree as to cause distraction from task or total abandonment of task (Tr. 361-62).

The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is well settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2) (now (c)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial deference or weight commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192-93 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2) (now (c)(2)); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has reiterated that remand may be required when the ALJ fails to specify the weight afforded to a treating

physician's opinion and fails to provide good reasons for giving the opinion an unspecified weight that is less than controlling. *Cole v. Astrue*, 661 F.3d 931, 938-39 (6th Cir. 2011). As stated in *Cole*, "[t]his Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned.'" *Id.* at 939 (alteration in original) (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

In the same vein, the Sixth Circuit also recently took issue with an ALJ merely stating the treating physician's opinion "conflicted with other evidence," noting the allegedly conflicting evidence must be specified and "must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013). The Sixth Circuit held "[a] more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires." *Id.* at 379. Although "a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians . . . the regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight." *Id.* at 379-80 (citations omitted).

Failure to give good reasons requires remand, even if the ALJ's decision is otherwise supported by substantial evidence, unless the error is de minimis. *Wilson*, 378 F.3d at 544, 547. In *Cole*, the Sixth Circuit recognized that a violation of the "good reasons" rule could only be

harmless error under three circumstances: where the treating source opinion was patently deficient such that it could not be credited; where the Commissioner adopted the opinion of the treating source or made findings consistent with that opinion; or where the Commissioner otherwise met the goal of the treating source regulation, 20 C.F.R. § 404.1527(c)(2). *Cole*, 661 F.3d at 940 (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)). While each case must be evaluated to determine if the required procedures have been appropriately followed, an ALJ's failure either to specify the weight afforded to a treating physician or to outline sufficiently specific good reasons can be grounds for remand. *Gayheart*, 710 F.3d at 380; *Cole*, 661 F.3d at 939-40.

The ALJ discussed Dr. Tilson's treatment and opinion in his unfavorable decision (Tr. 16). As Defendant concedes, while the ALJ indicated some skepticism regarding Plaintiff's fibromyalgia diagnosis and he failed to specifically discuss Dr. Tilson's trigger point findings, the ALJ ultimately accepted Plaintiff's fibromyalgia diagnosis [Doc. 12, Page ID # 498]. While accepting the diagnosis, The ALJ found Dr. Tilson's underlying treatment records were not supportive of his opinion that Plaintiff was not able to sit, stand, and walk for more than one hour in an eight hour day. The ALJ highlighted that Dr. Tilson merely noted chronic fibromyalgia when asked to state the clinical findings used to support his opinion. The ALJ seemingly questioned Dr. Tilson's endorsement of Plaintiff's complaints of debilitating pain. The ALJ found that Dr. Tilson's treatment notes show complaints of only some fatigue and that the treatment records show normal range of motion testing and good and equal strength in the upper extremities. As argued by Defendant, the ALJ's decision indicates he found the *extent* of the limitations indicated by Dr. Tilson's medical opinion was not well supported by the treatment records.

It is undisputed that the ALJ failed to specify the amount of weight he assigned to Dr. Tilson's opinion. Plaintiff argues that this failure requires remand. Defendant counters that the ALJ's failure to specify the weight given to Dr. Tilson's opinion is harmless error. Defendant claims there is no requirement that the ALJ use specific words, and that the ALJ is only required to provide a clear rationale for giving less than controlling weight to the treating physician's opinion. Defendant argues that the ALJ met the goal of 20 C.F.R. 416.927(c)(2) by providing reasons for his implicit rejection of Dr. Tilson's opinion.

The ALJ failed to explicitly state that he was not assigning Dr. Tilson's opinion controlling weight, but it is obvious he is not. "A finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). "In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned." *Cole*, 661 F.3d at 938. Significantly, the ALJ also failed to specifically state what, if any, weight he gave to Dr. Tilson's opinion and the reasons for that weight.

The ALJ appears to be in agreement with Dr. Tilson's diagnosis as he found fibromyalgia to be a severe impairment; but, not in agreement with Dr. Tilson's opinion as to the severity and extent of the limitations caused by the fibromyalgia. Defendant concedes the ALJ did not explicitly state the specific weight he assigned to Dr. Tilson's opinion, but then Defendant confusingly argues the ALJ "discount[ed]" his opinion at one point and "implicitly rejected" the opinion at another point in Defendant's memorandum [Doc. 12 at Page ID # 502-03]. Although it is a crucial issue, Defendant only fleetingly comments on the ALJ's failure to state the weight assigned to Dr. Tilson's opinion by claiming the failure is harmless because the ALJ otherwise

14

met the goal of the treating source regulation by discussing several reasons for finding Dr. Tilson's opinion not supported by the record. To date, it is unclear whether Defendant is claiming the ALJ gave some discounted weight to the opinion or gave it no weight by rejecting it in its entirety.

As noted above, some deviation from the rules that require an ALJ to state the weight given to a treating physician's opinion is not necessarily fatal to an ALJ opinion.

> Because the treating-source rule is not a procrustean bed, requiring an arbitrary conformity at all times, we excuse a decision's noncompliance with its provisions where the decision has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though it has not complied with the terms of the regulation. So long as the decision permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, we look past such procedural errors.

*Francis*, 414 F. App'x at 805 (citations, alterations, and internal quotation marks omitted).

Defendant does not argue that Dr. Tilson's opinion is patently deficient, and the ALJ's opinion does not appear to treat his opinion as patently deficient either. So the remaining issue is whether the ALJ's decision permits Plaintiff and a reviewing court to have a clear understanding of the reasons for the weight given Dr. Tilson's opinion. In only briefly touching on this issue, Defendant does not have a consistent position on whether the ALJ gave the opinion some discounted weight or rejected it in its entirely. To the extent Defendant argues the ALJ gave no weight to the opinion of Dr. Tilson (stating the ALJ "implicitly rejected the opinion by discussing several reasons for finding the opinion not supported by the record [Doc. 12 at Page ID # 503]), this argument fails because the ALJ's determination does not seem to be a complete "rejection" as the RFC seems to incorporates some of Dr. Tilson's opinion. It is highly unlikely that the ALJ entirely rejected Dr. Tilson's opinion. To the extent Defendant argues the ALJ gave a discounted weight to the opinion of Dr. Tilson (stating the ALJ properly "discount[ed]" the

opinion [Doc. 12 at Page ID # 502]), this argument and the ALJ's decision leaves a claimant and a reviewing court wondering what, if any weight, was given to the opinion and why. This lack of explanation is even more perplexing because the ALJ explicitly gave "considerable weight" to the opinion of Dr. Holland, a consultative examiner, making the lack of an explicit statement of the weight given to the opinion of the treating physician all the more confusing.

The ALJ's failure to give state whether he was rejecting (no weight) or discounting (something less than controlling but more than zero) Dr. Tilson's opinion is not harmless. Furthermore,

> [a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. A procedural error is not made harmless simply because the aggrieved party appears to have had little chance of success on the merits anyway. To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability the violate the regulation with impunity and render the protections promised therein illusory.

*Wilson*, 378 F.3d at 546 (citations, alterations, and internal quotation marks omitted).

Due to the reviewing court's inability to determine the weight, if any, assigned to Dr. Tilson's opinion and the reasons for the weight assigned, I **FIND** the ALJ did not comply with the treating physician rule and I **CONCLUDE** this failure was not harmless error. Accordingly, I **CONCLUDE** Plaintiff's claim must be remanded to the Commissioner for compliance with the treating physician rule and full consideration of Dr. Tilson's opinion.[1]

---

[1] Plaintiff also raised other issues, including the propriety of the ALJ's credibility determination. Because the credibility determination may be impacted by a proper consideration and explanation of the weight given to Dr. Tilson's opinion as noted herein, I do not address the credibility determination or other issues raised by the parties.

## V.    CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I

**RECOMMEND**[2] that:

1)  Plaintiff's motion for judgment on the pleadings [Doc. 9] be **GRANTED IN PART** and **DENIED IN PART**.

2)  The Commissioner's motion for summary judgment [Doc. 11] be **DENIED.**

3)  The Commissioner's decision denying benefits be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Report and Recommendation.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[2]  Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the district court's order.  *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).